```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SUZANNE CARCAREY              :    CIVIL ACTION
                              :
         v.                   :
                              :
GEICO GENERAL INSURANCE       :    NO. 10-3155
COMPANY                       :
```

MEMORANDUM

McLaughlin, J.                                October 25, 2011

      This case arises from a vehicle accident in which Edward Carcarey ("Carcarey") was struck and killed by an unidentified driver while walking along the side of a road. Suzanne Carcarey ("the plaintiff"), as administratrix of her son's estate, brought this suit against GEICO for uninsured motorist benefits. The plaintiff's complaint alleges both breach of contract and bad faith claims.

I.    Summary Judgment Record

      On September 21, 2007, Carcarey was killed while walking with his girlfriend, Elizabeth Caserta, along Route 422 in Lower Pottsgrove. The vehicle which struck Carcarey has not been identified. At the time of the accident, the plaintiff had an insurance policy with the defendant. The policy contained uninsured motorist coverage that applied to family members residing with the plaintiff. Pl. Mot. for Partial Summ. J., Stmt. of Undisputed Facts ¶ 1, 3, 6; Def. Resp. ¶ 1, 3, 6.

On September 24, 2007, the plaintiff filed an uninsured motorist claim with the defendant. From September of 2007 until June of 2009, GEICO obtained information regarding this claim. The defendant requested that the plaintiff's attorney provide it with proof of Carcarey's residency, death certificate, papers of administration, the police report, and a witness statement from Caserta. The defendant sent several letters to the plaintiff's counsel and to Caserta requesting information. The defendant obtained a police report regarding the accident on January 21, 2008. The plaintiff's counsel provided Carcarey's Death Certificate and a police accident report on July 14, 2008.

On April 1, 2009, the defendant was advised that the plaintiff's present counsel had taken over the plaintiff's case. Present counsel also provided the defendant with a coroner's report. The plaintiff also participated in a phone call with the defendant and her present counsel in which she stated that she was no longer represented by the her former counsel. The plaintiff's former counsel continued to state that he represented the plaintiff. On April 14, 2009, the defendant sent letters to both lawyers requesting clarification of the plaintiff's representation. On April 20, 2009, the plaintiff's former counsel called the defendant and stated that he was no longer representing the plaintiff and that neither Carcarey nor Caserta were living with Suzanne Carcarey at the time of the accident,

which would affect Carcarey's entitlement to benefits. The next day, on April 21, 2009, the defendant received a letter from the plaintiff stating that present counsel now represented her.

With the assistance of the plaintiff's present counsel, the defendant continued its investigation. On April 28, 2009, the defendant spoke with Caserta and obtained a statement of the events from her. On May 15, 2009, the plaintiff's counsel provided the defendant with tax records for Carcarey from 2001 through 2003 and a statement book Carcarey used for his business. On June 1, 2009, the defendant made a verbal offer of $75,000 to the plaintiff's counsel. On June 9, 2010, the plaintiff filed this suit. Following initiation of the suit, the defendant offered $100,000. Def. Reply, Ex. A.; Pl. Resp., Ex. H.

II. Analysis[1]

The defendant has moved for summary judgment on the second of the plaintiff's claims, that the defendant acted in bad faith. The plaintiff contends that GEICO demonstrated bad faith

---

[1] On a motion for summary judgment, the Court considers the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there are no issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250.

in three ways: (1) the defendant offered less than 25% of the plaintiff's claim for $400,000; (2) the defendant spoke with the plaintiff's former legal counsel after new counsel had taken over representation; and (3) the defendant's counsel engaged in bad faith conduct by speaking with Caserta before her deposition without counsel present.

In Pennsylvania, bad faith claims are governed by 42 Pa. Cons. Stat. § 8371. In order to prevail on a claim of bad faith, "the insured must show that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." Amica Mut. Ins. Co. v. Fogel, __ F.3d __, No. 3611, 2011 U.S. App. LEXIS 18623, at *34 (3d Cir. Sept. 8, 2011) (Terletsky v. Prudential Property & Casualty Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1984)). A bad faith claim requires a heightened showing of clear and convincing evidence. Terletsky, 649 A.2d at 688. The court must decide a motion for summary judgment by viewing the evidence presented in light of the plaintiff's higher burden at trial. Amica, 2011 U.S. App. LEXIS 18623, at *33-*34.

The defendant first argues that a bad faith claim requires a prerequisite showing that the insurer refused to pay the claim. The Court disagrees. Pennsylvania courts have recognized that an insurer's bad faith is not limited to denials

4

of claims.  In the leading decision governing bad faith claims, <u>Terletsky</u>, the Pennsylvania Superior Court considered whether a low-dollar settlement offer could support a claim of bad faith.  <u>Terletsky</u>, 469 A.2d at 688.  Although the court found that there was no evidence of bad faith, because the offer was reasonable, there is no suggestion that the plaintiff was barred from pursuing a bad faith claim because a settlement offer was made.  <u>Id.</u> at 688-89.  Pennsylvania courts have also held that bad faith can include investigative practices during the litigation of a claim.  In <u>O'Donnell</u>, the Pennsylvania superior court considered a bad faith claim when the insurer had neither approved nor denied the plaintiff's claim.  <u>O'Donnell v. Allstate Ins. Co.</u>, 734 A.2d 901, 906 (Pa. Super. Ct. 1999).

      Language from the Court of Appeals for the Third Circuit supports the defendant's contention.  The court stated that "the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits."  <u>UPMC Health System v. Metropolitan Life Ins. Co.</u>, 391 F.3d 497, 506 (3d Cir. 2004).  That case, however, was about that defendant's decision to conceal an underwriting miscalculation in order to extract a higher premium from the plaintiff, not to deny a benefit.  In addition, the <u>UPMC</u> court cited <u>O'Donnell</u> favorably.  <u>Id.</u>

      The defendant cannot prevail on this motion simply because it made an offer to the plaintiff.  In deciding this

motion, the question is whether the defendant lacked a reasonable basis for its behavior and the defendant intentionally or recklessly disregarded that lack of reasonable basis.

Based on the undisputed facts, no reasonable jury could conclude that the defendant acted in bad faith.  At the time that the defendant made its initial $75,000 offer, the defendant was aware of Carcarey's limited income over the prior several years and of questions regarding the his residency and therefore coverage under the insurance policy.  Nor could a reasonable jury conclude that the defendant acted in bad faith in its subsequent offer of $100,000.  When that offer was made, there was additional evidence that Carcarey did not reside at Suzanne Carcarey's home and may have been negligent at the time of the accident

In support of her other two allegations, the plaintiff does not offer clear and convincing evidence on which a reasonable jury could conclude there was bad faith on the part of the defendant.

The record suggests that the defendant was acting conscientiously in ascertaining the plaintiff's representation and did not seek out information from the plaintiff's former legal counsel.  At the time that the plaintiff's former counsel called the defendant, the issue of the plaintiff's representation was unclear.  There is no evidence that the defendant sought out

information from the plaintiff's former counsel.

Second, the plaintiff does not present clear and convincing evidence that defense counsel engaged in improper behavior before Ms. Caserta's deposition.  At oral argument held on October 21, 2011, both Mr. Brassington, counsel for the plaintiff, and Mr. Moring, counsel for the defendant, informed the Court of the events which occurred before Ms. Caserta's deposition.  Their reports of these events are not contradictory and thus the Court accepts both representations as true.

On the day of Ms. Caserta's deposition, Mr. Brassington did not speak with Ms. Caserta.  He was informed by his client, Suzanne Carcarey, that Ms. Caserta wanted a lawyer present.  When Mr. Moring arrived at Ms. Caserta's home, Mr. Brassington had called a lawyer to come represent Ms. Caserta.  Mr. Brassington informed defense counsel that Ms. Caserta wanted a lawyer and that he should not speak to her.  Mr. Moring's paralegal had spoken with Ms. Caserta the day before and understood Ms. Caserta did not want a lawyer.  He entered the home and spoke with Ms. Caserta while Mr. Brassington was outside.  Mr. Moring informed Ms. Caserta that she could proceed without counsel if she wanted and that he wanted her to tell the truth.  Ms. Caserta or Suzanne Carcarey, who was also in the home, became upset.  Hearing this, Mr. Brassington entered the house and ended the conversation. Mr. Brassington was not present for the conversation nor did he

hear what was said by either Mr. Moring or Ms. Caserta.

No reasonable jury could conclude that Mr. Moring's decision to determine if Ms. Caserta wanted representation before delaying the deposition was an act of bad faith.  Neither counsel had been informed by Ms. Caserta or her legal counsel that she was represented when Mr. Moring spoke with her.  In addition, there is no evidence that Mr. Moring engaged in improper communication with Caserta during their conversation.

An appropriate order shall issue.